IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERMAINE CRADDOCK, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:15-cv-564-NJR-DGW |
| MICHAEL SAMUEL, COREY BUMP, KIM BUTLER, and JOHN DOE, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Corey Bump. (Doc. 85). For the reasons set forth below, the motion is denied.

## FACTUAL BACKGROUND

On June 24, 2013 Plaintiff Jermaine Craddock was awoken from his sleep by his cellmate Frederick Pigram repeatedly stabbing him with a "shiv" (homemade weapon). (Doc. 88, p. 1). Craddock had been housed with Pigram for approximately eight days, from June 17 to June 24, 2013. (Doc. 86-1, pp. 4, 6). Craddock testified the attack was preceded by multiple days of verbal threats, including statements by Pigram that he was going to "fuck me [Plaintiff] up" and "fuck my [Plaintiff] bitch ass up." (Doc. 86-1, p. 7).

Defendant, Correctional Officer Corey Bump, was the gallery officer at the Menard Correctional Center where Craddock was housed at the time. (Doc. 86-1, pp. 4, 6). On June 19, 2013 (the second day he was housed with Pigram), Craddock stopped

Bump at his cell bars, "explained to him the situation," and told him he "wanted to or needed to move out of the cell . . . , that [he] and his guy [were] not getting along and that, you know, the guy was saying things to [him] and stuff like that." (Doc. 86-1, pp. 6, 8).[1] In response, Officer Bump told him that there was nothing he could do other than talk to his superiors. (Doc. 86-1, p. 6).

Two days later, Craddock spoke with Bump again at his bars and told him he was being threatened by Pigram and needed to be moved. (Doc. 86-1, p. 9-10). He specifically stated Pigram was threatening to "fuck [him] up" if he didn't change cells, that Pigram was acting strangely, and that he required protective custody. (Doc. 86-1, p. 10). Bump gave Craddock the appropriate form for protective custody, which Craddock filled out and returned to Bump that night. (Doc. 86-1, p. 10). Bump told Craddock he would report the information to his lieutenant, would give the form to the Major, and that Craddock should hear from the Major in the morning. (Doc. 86-1, p. 10).

Craddock was never visited by the Major and was never transferred to protective custody. (Doc. 86-1, p. 10). Several days later he was attacked by Pigram with a shank. As a result of the attack Craddock suffered stab and slash wounds (requiring minor medical treatment) and psychological trauma. (Doc. 86-1, pp. 23-24). Officer Bump does not recall Craddock or any of the events described above (Doc. 86-2, p. 1).

---

[1] It appears from Craddock's entire deposition testimony that Pigram was acting erratically or strangely and that he tried to convey this to Bump. (Doc. 86-1, p. 12). It is unclear from Craddock's testimony whether he conveyed the specific threats of bodily harm to Officer Bump in their first conversation, but Craddock was clear that he informed Bump of the physical threats during their second conversation. (Doc. 86-1, pp. 8, 10).

## ANALYSIS

Summary judgment is proper only where the moving party can demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). The judge's role at summary judgment, however, is not to weigh the evidence or assess the facts, but simply to determine whether there is a genuine issue for trial. *Id.* at 259. The question is can there be only one reasonable conclusion based on the evidence, or could reasonable minds differ? *Id.* at 250-51.

Bump raises two bases for summary judgment. First, he argues Craddock has failed to produce evidence that he was aware of a serious risk of danger to Craddock or that he was deliberately indifferent to such a danger. (Doc. 85, p. 1). Second, Bump alleges he is entitled to qualified immunity.

**I.** *Failure to Protect*

The Supreme Court has been clear the Eighth Amendment creates a duty on the

part of prison officials to protect inmates from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a failure to protect claim, an inmate must first show he was incarcerated under conditions posing a substantial risk of harm. *Grieveson v. Anderson,* 538 F.3d 763, 775 (7th Cir. 2008). The Seventh Circuit has been clear the beating of one inmate by another "clearly constitutes serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Here, Craddock alleges, and Bump does not appear to contest, that Pigram threatened to harm Craddock and ultimately attacked him with a shiv. (Doc. 86-1, pp. 23-24). Thus, the uncontested evidence is that there was a substantial risk of harm.

Next, the inmate must show the prison official had actual knowledge of the risk. *Gevas v. McLaughlin,* 798 F.3d 475, 480 (7th Cir. 2015). The official must "both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Evidence that the prisoner complained to prison officials about a specific threat to his safety is often sufficient to show the official was aware of a specific, impending and substantial threat. *Gevas,* 798 F.3d at 481; *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Here, shortly after being housed with Pigram, Craddock told Officer Bump he wanted to move because he wasn't getting along with his new cellmate. (Doc. 86-1, p. 8). Two days later, he had a second conversation with Officer Bump where he explained that Pigram had threatened him if he did not move, that Pigram was behaving strangely, that he was desperate to move, and that he wanted to be placed in protective custody. (Doc. 86-1, p. 10). Bump has produced no evidence to the contrary. Thus, evidence exists

upon which a jury could find that Bump was aware of a serious threat to Craddock's safety.

Finally, the inmate must show the prison official acted with deliberate indifference to the risk. *Farmer*, 511 U.S. at 838-39. Failing to take reasonable measures to abate a substantial risk of harm is evidence of deliberate indifference. *Farmer*, 511 U.S. at 847. Although Craddock testified that Bump took the form he filled out requesting protective custody and told Craddock he would speak with his superiors, there is no evidence in the record that Bump ever did so. During discovery, the defendants were unable to produce a copy of the form completed by Craddock. (Doc. 88, p. 7). Further, in the four days between when he handed Bump the form and when he was attacked by Pigram, Craddock was never visited by any of Bump's superiors and was not put into protective custody. (*See* Doc. 86-1, pp. 6, 10). A jury could reasonably conclude the failure to produce the document, and the failure of the prison to act on the request for protective custody, is evidence Bump never turned in the form or alerted his superiors to the danger. Thus, evidence of Bump's deliberate indifference to the threat faced by Craddock exists, precluding summary judgment.

Defendant argues, nonetheless, that although he has no actual recollection, he would have turned in the form because that is his practice.[2] (Doc. 86-2). As Craddock rightly points out, evidence of habit, routine, and practice pursuant to Federal Rule of Civil Procedure 406 requires more than just a statement of the same. "[B]efore a court

---

[2] Bump also claims that Craddock testified in his deposition that Bump left the protective custody form for his supervisor. (Doc. 86, p. 6). The Court finds this contention to be unsupported by the deposition transcript. Rather, Craddock testified several times that he had no information about whether Bump ever forwarded his request for protective custody. (Doc. 86-1, pp. 6, 8).

may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988). Bump's declaration includes no such evidence. Even if Bump's declaration were admissible, a jury would be free to weigh the credibility of such a claim. Thus, material issues of fact exist as to what steps, if any, Bump took in the face of a substantial risk of harm to Craddock, other than having Craddock fill out a form.

Because material issues of fact remain, and Bump cannot show he is entitled to judgment as a matter of law, summary judgment is inappropriate.[3]

**II.** *Qualified Immunity*

In determining whether a defendant is entitled to qualified immunity, the Court must consider whether the officer's conduct violated a constitutional right and whether the right in question was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). As discussed above, prisoners have a constitutional right to have prison officials protect them from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Craddock's testimony that he told Bump about the threat posed by his cell mate, and Bump's alleged failure to respond to that threat, is sufficient to establish violation of a constitutional right for purposes of summary judgment. Thus, the

---

[3] Craddock further argues Bump's answers to the First Amended Complaint and subsequent discovery resulted in admissions. (Doc. 88, pp. 8-9). Because material issues of fact exist precluding summary judgment, the Court finds it unnecessary to address these claims.

only remaining question is whether that right was clearly established.

A right is clearly established "where it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. A party may demonstrate a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

It is "well settled" in the Seventh Circuit that prison officials have a duty to protect a prisoner once they become aware he is in danger of assault by another prisoner. *Gevas*, 798 F.3d at 485 (citing *Farmer*, 511 U.S. at 832-34). Over twenty years ago, the Seventh Circuit held, in *Haley v. Gross*, that an officer was deliberately indifferent when he did nothing in response to complaints from an inmate that his cellmate was intimidating him, acting strangely, and threatening him. *Haley v. Gross*, 86 F.3d 630, 643 (7th Cir. 1996). More recently, in *Gevas v. McLaughlin*, the Seventh Circuit reiterated that a prison official who knows a plaintiff faces danger from his cell mate is obligated to take reasonable steps to address the danger. *Gevas*, 798 F.3d at 484. As discussed above, giving all reasonable inferences to the nonmoving party, the evidence shows that Bump was made aware of a threat of assault against Craddock by his cellmate. Given the well settled nature of the law on this issue, Bump's claim that "he would not have known his actions would subject him to liability" is incredible.

Because the state of Seventh Circuit jurisprudence clearly provides notice to

prison officials that failure to protect a prisoner from known violence by a cellmate is a violation of the Eighth Amendment, Bump is not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth, the Motion for Summary Judgment (Doc. 85) filed by Defendant Bump is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 2, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**